on behalf of Mr. Romero. Really, this is a very simple case. The nuts and bolts of this case are boiled down to just a couple pages in the record. The sentencing hearing presided by Judge Rial in this case, in the excerpts of record, starting on page 13 through about 16, Judge Rial makes several statements about the amount of loss in this case, the possibility of restitution, what evidence is there, what evidence isn't there, and basically what Judge Rial does is he doesn't make any specific findings about the amount of loss in this case. Did he ever say, I adopt the pre-sentence report or I adopt the government's submissions? No, no, not at all. In fact, there's suggestion that he rejects the PSR. I noticed that remark about hearsay. Right. I didn't understand it, frankly, because hearsay is admissible in sentencing. I know. I didn't understand that either, Your Honor. There are a couple things. They're just confusing about what happened. But he never said – sometimes he's very terse, but sometimes he makes it clear that he's adopting the government's submissions or proposed determinations. He never did, Your Honor. He never specifically adopted the PSR. He never adopted the government's estimation of loss in this case. Regarding the PSR, the prosecutor in the case at sentencing on the excerpts of record, page 15, says that the United States Probation Office calculated the loss and restitution amount at about $1.4 million. And the Court says, I don't know where they got that. They didn't set it out to me. The Court is clearly – doesn't have any anchors or bearing or sense of where they're getting this number, yet it appears that sort of off-the-cuff imposes the corresponding guideline for the amount of loss in this case, which doesn't really make any sense. Do you have any – I'm inclined to agree with you that Judge Riell in this case seems to have rejected the prosecutor's argument that anything more than $110,000 in loss had been proven and then seemingly adopted without corresponding with that remark, the recommendation of the PSR. Do you have any case law that indicates what happens in that situation where the judge is either confused or forgot or didn't read the PSR? Well, the defendant is entitled to specific findings, especially where there's a 16-level increase for specific offense characteristics. And under those circumstances, the judge has to make specific findings to support such an increase. And your case authority for that is what? United States v. Licciardi, 30 F. 3rd, 1127, Ninth Circuit, 1994, remanding for computation of loss involved for sentencing purposes where there were no specific findings made by the district court. What was the site on that again, please? It is 30 F. 3rd, 1127. And it was 19 what? 1994. Okay. And it's L-I-C-C-I-A-R-D-I. I'm not sure if I'm pronouncing that correctly. Okay. Okay. There's also the issue of the standard. And I gather your position is it has to be clear and convincing? Correct. Given the disparity in the sentence? No. We were thinking along the same lines. Is there some authority that you have for whether this particular bump is a disparity such that you use the clear and convincing standard rather than preponderance? Not for this specific amount of loss. I haven't been able to find any cases addressing these specific facts. However, when there are – when there's such a disparate result in the sentencing, it's pretty axiomatic that the government, at least, has approved this. I don't know if it's axiomatic. It's a matter of judgment. Right. The United States v. Zolp, Z-O-L-P, and I don't have the – it's in my brief, but I don't have the site just right offhand. I know about that one. Okay. And then there's Showalter, 569 F-3rd, 1150, vacating a sentence and remanding for resentencing where the only evidence supporting a two-level increase was in a contested PSR. Counsel, if you could just list for us how you come up with this 4 million-plus figure. Well, I didn't come up with it. No, I know that. But how is that supported? Well, the – it's 1.4 million. That was one of the government investigators' assessments of the amount of loss. And that's interesting in this case, too. What the investigator did was he went through all of the myriad bank accounts that were associated with Mr. Romero in this case or that he was – had his name on. But it was for the years from 2001 through 2006. And I think that might be a little bit problematic, too, because the indictment in this case references criminal conduct for the years 2003, 2004, and 2005. So basically, the investigator – Wouldn't it still be relevant conduct? Well, it could be relevant conduct. But again, that wasn't – it wasn't something that was found by the district court. And for relevant conduct, the district court must make specific findings under 1B1.1. Is there any reason, if you were to prevail in this case, why a remand should be to the same judge or a different judge? It could be to the same judge. That's fine. But with specific instructions that the amount of loss must be supported by specific findings. And I think that there should be a hearing where the documents are detailed and specific objections are raised and addressed by the district court. One of the other things that I think is troubling in this case is that defense counsel did raise objections to the loss calculation. And maybe the government can explain, you know, where this figure came from, because I'm – I'm having a hard time figuring out where all the money is coming from. And there is some double-counting. I hope you save yourself some time to respond to their explanation. Right. So, well, with that said, I will save the rest of my time. Thank you. Very good. We'll hear from the government. Ms. O'Neill, I believe, right? Good morning, Your Honors. May it please the Court. Carrie O'Neill on behalf of the United States. I'll jump right to the issue of the loss calculation and the district court's findings in this case. It's the government's contention that the revised PSR, its addendum, and the declaration of Robert Prenti are more than sufficient to – Did the judge ever say that he adopted them? He did not expressly say he adopted them. Point – point to some place in the record where the judge, as opposed to the prosecutor or the probation officer, makes a finding resolving the dispute about the amount of loss. Just point to a page so that we can say, oh, yep, there's a finding on amount of loss, and that would satisfy Rule 32. Okay, Your Honor. I can point to ER-16, which is where the district court – ER-16. It doesn't specifically respond to your question, but the district court did say at that point that it had read the PSR. But at 14, that's where the judge says he didn't think he could make out a case beyond 110,000. Well, the government quarrels with that interpretation of the record. How would you interpret it? He just says he read it, and on the previous page he says, I don't know where they got that. That is correct, Your Honor. I think in this case, the revised PSR – I mean, I've read something and not said, yep, I agree. In fact, most cases I read the briefs on both sides, and it doesn't mean I adopt them. I understand, Your Honor. But I think at this – in this case, what's happening here is that there's a level of confusion that's being tried – being tried to interject it into the district court. Counsel, counsel, help us more. Yes, Your Honor. Identify someplace better in the excerpts of record. You've got the dispute under Rule 32. The judge has to make a finding. Just point to something better about what the finding is by the judge. Not how it could be justified and not how the loss could be supported. Just a finding by the judge resolving the dispute. There is no – Got anything better? There is no specific finding by the district court resolving the alleged factual dispute about the loss amount. Where? What it is, the government – there is no specific finding by the district court. Why don't you help the judge then? I mean, when I was a district judge, sometimes the lawyers, when they saw me making a mistake, would advise me. They'd counsel me. There was no AUSA before the district court on this case. But what I will note is that it is unclear whether or not, indeed, there was still a Rule 32 question, a factual dispute, that needed to be resolved. Because after the issuance of the revised PSR, its addendum and its declaration, defendant did nothing. Specifically in the addendum itself, it stated that the defendant did not object. And that is specifically at USP 047. Well, let's admit all of that. Since it's a Rule 32 issue, and at least arguably under some of our case law here that you have to show by clear and convincing evidence, the burden on the government – I mean, whatever the defense did or did not do, you have a burden to bear. Rule 32 says the district judge has got to He, in this case, went the way he did. Like Judge Kleinfeld, I searched the record. I don't find it. I don't see it. If you can point us to something that shows that he explained how he went from saying, I don't see I get 110,000 to where it's over a million in the PSR, I'd love to see it. Then that's fair. But I don't see it. You're right. I cannot offer you that specific explanation. I concede that It's the government's position, however, that the revised PSR and all its attachments, the 22 exhibits of Robert Prenti, are more than sufficient evidence to satisfy They'd be sufficient maybe if there was a finding. Yes, Your Honor. Are you – is your contention that the evidence is sufficient for the finding that isn't there? Is your – is your argument that the finding is there, or is your argument that no finding is necessary because there was no defense objection? Our argument is that the evidence is sufficient to meet the government's burden of proof, clear and convincing evidence, and also that because the defendant did not further object to the addendum and the declaration of Robert Prenti, which specifically rebutted his objections about double counting, about the health insurance premiums, specifically responded to those in paragraphs 7 and 8 of his report at page 125 of the USPO 125, specifically responded and mooted his objections. The addendum itself knows that the defendant did not further object. In the district court, the court asked the defendant, are there any additions or corrections to make to the report? No, Your Honor. Asked defense counsel, please state your position. And the defense counsel said, well, we rest on our papers. But those objections in the papers have been specifically rebutted and rejected by the Prenti declaration. And again, I understand you're a good advocate and you're arguing your position here, but there is confusion here. And under Pena de Doval, one of our cases, construing rule 32, it's clear that any disputed portion of the pre-sentence report or the colloquy must be explained by the district judge. And that's what we're looking for. It seems like the government's position is it's almost like the defense had the burden here, not the government. No, Your Honor. That's not the government's position. But the government put into the record more than sufficient evidence to establish its position. The defendant did not then further object. And I'll note, initially, when the first PSR came out, the defendant objected. And the government did what Showalter asked the government to do, which is to put more evidence into the record. At that point, then, there was nothing further from the defendant. And there are cases where there is, at this point, an uncontroverted PSR, in essence. And it's the government's contention that the defendant didn't further object. And thus, there was no clear factual dispute at the time of sentencing for the district court to resolve. Do you have any case law that indicates that if there is an uncontroverted PSR, in terms of your amended PSR or supplementary PSR, that directly contradicts what the district judge said before that that's okay? That directly contradicts what the district judge said before, Your Honor? Yeah. In other words, he couldn't see how the government could make out proof of more than 110,000. Well, I can only point to cases like Showalter, Marine Cuevas, Brigham, Romero-Rendon, and then point to cases. But with respect, counsel, don't those cases really just say that if you've got a PSR and the district judge takes the PSR, doesn't say anything about it, but poses a sentence in accordance with it, but says nothing else, that that's okay. Isn't that what those cases say? That is true, Your Honor, yes. So here, what we're wrestling with is the district judge who says, hey, I just don't see how the government makes out his case above $110,000 and the PSR is hundreds and hundreds of thousands of dollars more. That's my dilemma. And I think some of my colleagues. Well, perhaps, and again, I understand that I keep going to sort of the factual side of the issue. But when looking at the sentencing transcript and the discussion of the $110,000, it's the government's position, as stated in the briefs, that that discussion was specific to restitution. Now, I know the record is not as clear as it could have been. But when one looks at the court's language, he's talking about a judgment, he's talking about reimbursement for the son who was charged in the same indictment, pled to the same counts, and was sentenced on the same day. And the defendant included that in his excerpts of record. It's at ER 21. The court specifically stated that the matter of restitution to at least a reported victim of the defendant's conduct has been settled by the payment of the $110,000. So we know that to be the court's position, that the $110,000 is asked to restitution. Moreover, I would note that the only time defense counsel at the sentencing hearing spoke up to talk about sort of the money, the lost figures here, was at the conclusion of this discussion about judgment and reimbursement and questioning the preemptive declaration, was to say that the probation office went to great pains to indicate it couldn't point out what restitution was. Well, I hear your argument, but the $110,000 actually came from the AIWU lawsuit. Yes, Your Honor. So this was a separate proceeding. He looked at this and said, you know, basically it's collateral estoppel is what he's looking at, I suppose. He's saying they couldn't make this out here. It looks right to me. So it's not like everybody was just talking about restitution and it was in this proceeding. It was a whole separate lawsuit that went on, and that's what was proven. Well, Your Honor, it's the government's position. Actually, the $110,000 came from a stipulated settlement and judgment in AIWU v. Romero. But it was a lawsuit. It was a lawsuit. And in Leonard Tolton's declaration, who was the current president of AIWU at the time of the district court proceedings, he said it was not until the government's criminal case against the defendant and his son that they were made aware of these undisclosed accounts and that the defendant and his son had been siphoning money from them. So query whether or not the $110,000 fully captures the loss amount in the first place. But secondly, in a case like this where the counts of conviction are 1,001, they don't have an element of scheme or fraud in them, there is a distinction in these types of cases between what the loss can be, which can include all of the relevant conduct, which the defendant did not object to before the district court, and what restitution is. Because in these types of cases, and this wasn't argued before the district court, and as I said I was not the AUSA before the district court, but ostensibly restitution and loss in this case could not be the same because the restitution can only be tied to the counts of conviction and under 1B1.3A3 the harm that flows from those counts of conviction. So I don't think it was a fatal flaw for the district court to be troubled by the evidence on restitution to this specific victim when here we have counts of conviction that are not scheme counts and thus the loss and the restitution do not have to match. I think we have your argument. Do either of my colleagues have any further questions? No. Okay. Thank you very much, counsel. We'll have a rebuttal. Okay. Very good. We like those. I have a question. I'm sorry. We've got a question here. The government made the argument that the defendant did not object after the revisions to the pre-sentence report. Okay. I would refer the court to excerpts of Record Page 10. On the top of that page at the sentencing hearing, defense counsel said that he reaffirmed, he renewed his objections in writing to the court and said that we've been Where he says we filed our arguments in writing with Your Honor? Yes, yes. And we object and we set forth why, and the government is turning this into a fraud case and it's a false statements  So the defense counsel did object. He did so orally. He renewed his reliance on his papers previously, and he again requested probation in this case. Tell me whether, I was looking this over again, and I wonder whether it could be read to mean that the judge was making a mistake in favor of the defendant. At least Mr. Brooklier thought that might be happening, and he was thinking there was only a $110,000 loss, and Ms. Kim was arguing vociferously for $1.4 million, and the defense kept quiet because the judge said that's been settled. They've established their losses at $110,000. It's possible that that is what the district court was thinking, and on page 21 of the excerpts of record, the last paragraph, the judge does discuss this matter of the $110,000 loss, and he equates that to restitution, which has been found in the civil case. And restitution, there's a much higher burden of proof to establish restitution than there is for loss, just generally. So I would think that the reason I brought it up is I wonder whether the district court was thinking that the defense was waiving and did not want the Rule 32 determination at that point, because it looked as though the judge was making a mistake in the defendant's favor. It's unclear. It's unclear. If that were so, that would support the government's waiver argument. Well, we really can't say from the record whether that's true or not. I just don't think that that's clear. I think that what defense counsel was doing was just renewing his objections, and I don't think that there's any real evidence from the record that he's trying to get away with some sort of beneficial deficiency from the court. But in any event, Mr. Romero, he didn't have the burden of proof in this case. It was on the government to show all of these things. It wasn't up to Mr. Romero to create a number of restitution or loss. We don't get to whether proof is enough if the judge never made a finding at all. Correct. What matters is, did he make a finding? No. Right. Did the defense request a finding? And there, I guess it's a little arguable. Certainly in its original submissions, the defendant put the amount at issue. But in this argument at sentencing, it sounds as though the defendant might be trying to say, well, what we've got, we've already put it in writing, and we're not the judge who's saying 110, and we're sitting on our hands here, because that's great. Well, the banter certainly took place between the government and the district court in this case. And the defendant did what he needed to do, which was raise an objection and nothing else. Does he say here, where does the judge say here it's going to be $1.4 million, and then the defendant says, I object? The district court never said $1.4 million. In fact, the district court did not identify a number for loss. It never happened in this case. So the fact that he bumped Mr. Romero's sentence 16 levels based on we don't know, we don't have a number, and we don't know. So he never said orally the loss was $1.4 million at all? No, never. Not one time. I'm really confused by the position that the government took to some degree. She indicated that the real issue here is between restitution and loss proven based upon the elements of the indictment. Yet if you look at ER 15, the court says the probation officer has not given me anything beyond the $110,000. And Ms. Kim, who I gather was the AUSA who tried the case, have argued vociferously that the addendum calculated a loss at $1,481,632. And the court says, I don't know where they get that. They didn't set it out to me. And then he talks about a declaration, and the court says, oh, they can't do that. They can't take evidence like that on that kind of thing. And the court says, and it was $110,000. So this is not just a one-line deal that the court said. There was a colloquy between the government and the court about the appropriate amount in this case. And so from what I see, the court never said, hey, you know, you're right about this $1,400,000. It wasn't just a mistake. He talked about it. He thought about it. And just in winding up, and then we've got to stop here, do you see any distinction for purposes of Judge Riel's discussion here between the restitution amount and the amount that had to be proven as a loss in the indictment, pursuant to the indictment? It seems like, just from the colloquy that took place, that when the government and the court were discussing restitution and loss, they were sort of merged together. However, it appears also from page 21 that the district court did believe that the $110,000 in the civil case was a restitution amount. And that seems like what the district court believed. So the district court's imposition of the 16-level bump corresponding to $1.4 million, I don't know. But again, as I understand your position, the government has to show this by clear and convincing evidence. Correct. The burden is on the government, not on the defendant. And the court was not clear. Exactly. Okay. Thank you, Your Honor. Any other questions for my colleague? Thank you both for your argument. We appreciate it. The case of United States v. Romero is submitted. And we will next hear argument in the case of Aguilar v. Holder. And I note that we are very pleased today to have two law students from the University of California at Irvine School of Law who are under supervision of practicing lawyers who are also acting as pro bono counsel. So we congratulate both the pro bono counsel and the students, and we welcome you here. I don't know how you are dividing up your argument. If you'll let us know, we'll be happy to accommodate you.
judges: Fletcher, Kleinfeld, Smith